# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF LOUISIANA
# MONROE DIVISION

| | | |
|---|---|---|
| LLOYD T. STEPHENS | * | DOCKET NO. 08-0857 |
| VERSUS | * | JUDGE JAMES |
| 4TH JUDICIAL DISTRICT COURT, ET AL. | * | MAGISTRATE JUDGE HAYES |

## REPORT AND RECOMMENDATION

Before the undersigned Magistrate Judge, on reference from the District Court, is a Motion to Dismiss for Lack of Subject Matter Jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1) and a Motion to Dismiss For Failure to State a Claim pursuant to Federal Rule of Civil Procedure 12(b)(6) filed by defendants, the 4th Judicial District Court, Judge Jimmy Dimos ("Judge Dimos"), Judge C. Wendell Manning ("Judge Manning"), and Judge Alvin Sharp, Jr. ("Judge Sharp") (collectively "Defendants") [Doc. # 10]. The motion is opposed. [Doc. #17]. For reasons stated below, it is recommended that the motion to dismiss for lack of subject matter jurisdiction be **GRANTED.**

## BACKGROUND

On June 16, 2008, Plaintiff Lloyd T. Stephens filed the present complaint pursuant to 42 U.S.C. § 1983 alleging that, in a prior suit regarding the curatorship of plaintiff's quadriplegic son, Judge Dimos stated that Plaintiff's daughter claimed that Plaintiff had molested her and then refused to allow Plaintiff a hearing on the matter. Although it is somewhat unclear from the

1

record, it appears that on January 6, 1999,[1] Plaintiff was removed as the curator of his son and his ex-wife was named as sole curatrix by Fourth Judicial District Court Judge John R. Harrison. (Plaintiff's Ex. D, Doc. #14). Subsequently, in 2005, Plaintiff requested that his ex-wife be removed as curatrix, but this request was denied by Judge Dimos. Plaintiff's claims in this case arise primarily from the trial held in that action. Plaintiff's complaint states:

> The Judge stated my daughter said I had sexually molested her as a child. I, nor my wife heard the accusation. The judge never asked me any questions, and there was no discussion about this matter. Had I heard the accusation I would have told the judge that the same accusation was made at a Texas custody hearing many years ago. I was investigated and the accusations were found to be untrue. And I was awarded custody of all my children, including the one that told this lie.
>
> The judge falsely made a statement in court that this had been "fully" discussed. This was in 2005 when I had first found out about the accusation. My attorney, Layne Adams asked me about it, (the judge had told him in conference that I was a child molester). My attorney and I tried to have a hearing about this but the judge would not let us bring it up, stating that it had been fully discussed in 1999. I have never been arrested for any sexual misconduct. I have never had a hearing to prove my innocense [sic]. This is against my constitutional rights of Equal Justice for all.

(Complaint, Doc. #1).[2] Plaintiff also alleges that when he was seventeen he was in a fight with Judge Dimos's father; therefore, Judge Dimos was biased against him and should have recused

---

[1] The judgment was signed on March 19, 1999, but states that its effective date was January 6, 1999.

[2] Along with his complaint, Plaintiff submitted an affidavit from his attorney during the state court proceeding stating that "[o]n one or perhaps two occasions while in chambers, the Judge assigned to the case, Jimmy Dimos, made a comment on the case. Judge Dimos' comment was that in an earlier proceeding, prior to my representation of Lloyd Stephens, one of Lloyd Stephens' daughters testified that she had been sexually abused by Lloyd Stephens as a child." The affidavit further states that "Affiant confronted Lloyd Stephens with the Judge's comment. Lloyd Stephens denied ever sexually abusing any of his children. When the latest chapter of this case was heard on July 14 and 15, 2005, Affiant attempted to elicit testimony related to the sexual abuse allegation. Attorney for curators, Danny Ellender, objected. The Court sustained the objection."

himself on such ground.[3]

On July 25, 2008, Defendants filed a motion to dismiss on the following grounds: (1) this Court lacks subject matter jurisdiction over this action under the *Rooker-Feldman* doctrine in that Plaintiff's claims constitute a collateral attack on a state court judgment; (2) the complaint contains no factual allegations against Defendants Manning and Sharp; (3) judicial immunity; and (4) the 4th Judicial District Court lacks procedural capacity and therefore is not subject to suit.

## LAW AND ANALYSIS

"When a Rule 12(b)(1) motion is filed in conjunction with other Rule 12 motions, the court should consider the Rule 12(b)(1) jurisdictional attack before addressing any attack on the merits." *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001) (citation omitted). "This requirement prevents a court without jurisdiction from prematurely dismissing a case with

---

[3] In his amended complaint, Plaintiff states as follows:

> I respectfully request a change of venue to another district and ask that all evidence from 1997 to present be allowed. Evidence will prove that I tried to keep my quadriplegic son from possible harm and sure discomfort by riding 300 miles in a small pickup. This action should not have caused me to lose my rights as father, especially since I was last parent to have custody of my son. All I am asking for is a fair hearing so that I may regain curatorship of my son, and that my name be cleared of the false molestation charge.
> I pray also that this honorable court will demand 4th Judicial District and Judge Dimos to pay all court cost and attorney fees for the new trial, being it that none of these proceedings after 1999 should have ever taken place had I been allowed to present evidences of contempt, perjury, inappropriate use of funds, physical neglect, etc.
> My son can be helped but has been denied the opportunity due to gross misconduct by Judge Dimos.

prejudice." *Id.* "The court's dismissal of a plaintiff's case because the plaintiff lacks subject matter jurisdiction is not a determination of the merits and does not prevent the plaintiff from pursuing a claim in a court that does have proper jurisdiction." *Id.*

A. Subject Matter Jurisdiction

A case is properly dismissed for lack of subject matter jurisdiction when the court lacks the statutory or constitutional power to adjudicate the case." *Home Builders Ass'n of Miss., Inc. v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998) (quoting *Nowak v. Ironworkers local 6 Pension Fund*, 81 F.3d 1182, 1187 (2nd Cir. 1996)). The party seeking to invoke jurisdiction bears the burden of demonstrating its existence. *See Ramming*, 281 F.3d at 161; *Howery v. Allstate Ins. Co.*, 243 F.3d 912, 916 (5th Cir. 2001). In fact, "there is a presumption against subject matter jurisdiction that must be rebutted by the party bringing an action to federal court." *Coury v. Prot*, 85 F.3d 244, 248 (5th Cir. 1996)(citing *Strain v. Harrelson Rubber Co.*, 742 F.2d 888, 889 (5th Cir. 1984)).

"Attacks on subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1) come in two forms: 'facial attacks' and 'factual attacks.'" *Garcia v. Copenhaver, Bell & Assics., M.D.'s, P.A.*, 104 F.3d 1256, 1260-1 (11th Cir. 1997) (citing *Lawrence v. Dunbar*, 919 F.2d 1525, 1528-9 (11th Cir. 1990); *see Williamson v. Tucker*, 645 F.2d 404, 412 (5th Cir. 1981). Facial attacks on the complaint "require the court merely to look and see if the plaintiff has sufficiently alleged a basis of subject matter jurisdiction, and the allegations in [her] complaint are taken as true for purposes of the motion." *Lawrence v. Dunbar*, 919 F.2d 1525, 1529 (5th Cir. 1990)(quoted source omitted). The instant motion raises a "facial attack."

"The presence or absence of federal-question jurisdiction is governed by the 'well-pleaded

4

complaint rule,' which provides that federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint." *Rivet v. Regions Bank of Louisiana*, 522 U.S. 470, 474, 118 S.Ct. 921, 925 (1998)(citations omitted). Federal question jurisdiction is properly invoked when plaintiff pleads a colorable claim "arising under" the Constitution or laws of the United States. *Arbaugh v. Y & H Corporation*, 546 U.S. 500, 126 S.Ct. 1235 (2006).

In this case, Defendants' jurisdictional argument is based on the *Rooker-Feldman* doctrine, which "precludes a federal district court from proceeding in 'cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before district court proceedings commenced and inviting district court review and rejection of those judgments.'" *MAPP Const., LLC v. M&R Drywall, Inc.*, 2008 WL 4344953, *1 (5th Cir. 2008) (quoting *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 283 (2005)). "The doctrine 'provides that a United States District Court has no authority to review final judgments of a state court in judicial proceedings.'" *Id.* (citation omitted); *see also Mosley v. Bowie County Tex.*, 275 Fed.Appx., 327, *2 (5th Cir. 2008) ("The *Rooker - Feldman* doctrine provides that 'federal district courts, as courts of original jurisdiction, lack appellate jurisdiction to review, modify, or nullify final orders of state courts.'") (citation omitted).

"*Rooker-Feldman* bars direct review in the lower federal courts of a decision reached by the highest state court, because such authority is vested only in the Supreme Court." *Id.* (citation omitted). "*Rooker-Feldman* is a bar not only to claims actually litigated in state court, but also to claims that are 'inextricably intertwined' with those that were litigated." *Id.* (quoting *Dist. of Columbia Ct. App. v. Feldman*, 460 U.S. 462, 486-87 (1983). "Thus, review is precluded by

5

*Rooker-Feldman* whenever 'success on the federal claim depends upon a determination that the state court wrongly decided the issues before it.'" *Id.* (citation omitted). Moreover, "[t]he casting of a complaint in the form of a civil rights action cannot circumvent [the *Rooker-Feldman* doctrine]." *Liedtke v. State Bar of Tex.*, 18 F.3d 315, 317 (5th Cir. 1994) (citation omitted).

The undersigned finds that, when stripped to their core, Plaintiff's claims in this case constitute a collateral attack on a final state court judgment. Plaintiff argues that in ruling against him in his state court proceeding to remove his ex-wife as curatrix of their quadriplegic son, Judge Dimos relied on the false accusation, made in a prior proceeding, that Plaintiff had sexually molested his daughter and that he did so without providing Plaintiff a hearing on the issue.[4] He also alleges that Judge Dimos's ruling was based on bias and that he should have recused himself. Importantly, as a remedy, Plaintiff seeks a new trial regarding the curatorship of his son. These allegations, although cast as constitutional violations, are an attempt to have this Court entertain appellate review of Judge Dimos's final state court decision.[5] As the *Rooker-Feldman* doctrine prevents this court from reviewing, modifying, or nullifying state court decisions, this Court clearly cannot grant Plaintiff the remedy that he seeks.[6] *See Gant v. Tex.*,

---

[4] He states: "I respectfully request a hearing for a new trial concerning my First Amendment Rights: Freedom of Speech, Equal Protection of the Law, and Due Process of the Law." (Complaint, Doc. #1)

[5] The undersigned notes that Plaintiff does not claim, nor is there any indication from the record in this case, that Judge Dimos's decision is not final.

[6] In a supplemental record filed after Defendant's filed their motion to dismiss, Plaintiff states that Judge Dimos did not allow him to subpoena Adult Protection Services with regard his son being transported 300 miles in a small truck. "[T]he Fifth Circuit has held that when reviewing *pro se* complaints, the court must employ less stringent standards, look beyond the inmate's formal

123 Fed.Appx. 622 (unpublished) (affirming district court's finding that *Rooker-Feldman* barred the plaintiff's claims on the ground that the face of his complaint sought reversal of the state court judgment and the entry of judgment in his favor); *Bell v. Valdez*, 207 F.3d 657, *1 (5th Cir. 2000) (unpublished) (finding that *Rooker-Feldman* deprived district court of subject matter jurisdiction over plaintiff's claim that her ex-husband and the judge who presided over her divorce proceedings conspired to provide her ex-husband a favorable outcome in the divorce proceedings because the claim was essentially an appeal of the divorce decree); *Brown v. Green*, 2001 WL 1346322, *1-2 (E.D.La. 2001) (dismissing plaintiff's suit against her ex-husband and his attorney based on alleged constitutional violations during state court custody proceeding and

---

complaint and consider material subsequently filed as amendments to that complaint." *Smith v. Gusman*, 2007 WL 2407304, 84 (E.D.La. 2007) (citing *Howard v. King*, 707 F.2d 215 (5th Cir. 1983)). Therefore, the undersigned will consider the supplemental record.

     Although it is somewhat unclear, Plaintiff is apparently referring to an incident in which he attempted to prevent his ex-wife from allowing their son to ride 300 miles in a small truck. He states that his attorney subsequently talked with his ex-wife's attorney and they decided that he was correct in attempting to prevent the trip and that they did not need to subpoena the Adult Protection Services records. Nevertheless, argues Plaintiff, Judge Dimos held him in contempt and, as a result, removed him as curator of his son and imposed severely strict visitation rights on Plaintiff. Plaintifff states that his attorney requested a new trial, but the request was denied. Based on the documentation provided by Plaintiff, it appears that on January 27, 2000, Judge Dimos found Plaintiff to be in contempt of Judge Harrison's March 1999 ruling removing Plaintiff as curator and setting forth visitation privileges; accordingly, Judge Dimos rescinded the privileges provided in the previous ruling and instituted a new, more restrictive visitation schedule. (Doc. # 14, Plaintiff's Ex. E.). In any event, it appears that Plaintiff's claims in this regard are an attempt to collaterally attack Judge Dimos's contempt judgment. As Plaintiff does not contend, nor is there any indication from the record in this case, that the judgment revoking Plaintiff's privileges is not a final judgment, there is no basis for finding that this Court has subject matter jurisdiction over this claim.

     Plaintiff also states that he tried to present Judge Harrison's 1999 judgment and court record in an attempt to show that his ex-wife and daughters were in contempt of such judgment, but they were never held in contempt, and that Judge Dimos denied a forensic accounting of Plaintiff's son's finances. It is unclear whether Plaintiff's claims in this regard refer to the contempt judgment or Judge Dimos's 2005 denial of Plaintiff's request to revoke his ex-wife's curatorship; in either case, Plaintiff's claim again constitutes a collateral attack on a state court judgment and therefore, pursuant to *Rooker-Feldman*, is not within this Court's subject matter jurisdiction.

seeking reversal of state court judgment for lack of subject matter jurisdiction under *Rooker-Feldman*).

In his memorandum in opposition to Defendants's motion to dismiss,[7] Plaintiff makes a new allegation against Judge Manning. Plaintiff states that Judge Manning stated in court that he had seen Plaintiff's record and that it is his belief that Judge Manning was referring to the records of Judge Dimos regarding the charge that he is a child molester; he further states that Judge Manning issued a very harsh visitation ruling with which he cannot comply because of the hostile environment of his daughter's home.[8] Although Plaintiff does not provide any other specific information regarding the proceedings in which this judgment was issued, when it was issued, or any subsequent proceedings, Plaintiff's allegations yield no other conclusion than that Plaintiff is collaterally attacking Judge Manning's visitation ruling. Because, again, this Court has no jurisdiction to review final state court judgments, the Court does not have subject matter jurisdiction over this claim.[9]

---

[7] Although this claim was not raised in Plaintiff's complaint, the Fifth Circuit has held that it is within a district court's discretion to construe new claims raised in a memorandum as a motion to amend the pleadings, *Henderson v. Montgomery County*, 14 F.3d 53, *3 (5th Cir. 1993) (citing *Sherman v. Hallbauer*, 455 F.2d 1236, 1242 (5th Cir. 1972)); therefore, this Court will construe Plaintiff's allegations against Judge Manning as a motion to amend his complaint and will consider these claims.

[8] He also states that although he believes the records were from Judge Dimos, they could have been his juvenile record files; he then recites his criminal history.

[9] As for Judge Sharp, Plaintiff alleges that Judge Sharp ruled against him in a child custody proceeding involving his daughter when she was fourteen years old. Plaintiff states that his attorney refused to appeal the decision, so he appealed himself to the Fifth Circuit and he was awarded custody of his daughter. The undersigned notes that this Court is aware of no mechanism by which Plaintiff could have appealed his state court custody determination to the Fifth Circuit Court of Appeals; perhaps Plaintiff appealed the decision to the Louisiana Second Circuit Court of Appeal and/or the Louisiana Supreme Court.

Plaintiff bears the burden of establishing that this Court has subject matter jurisdiction over his claims. Even construing the allegations stated in the complaint liberally due to Plaintiff's *pro se* status, the undersigned finds that Plaintff's claims, although filed under the guise of a §1983 action, are a collateral attack on one or more final state court judgments, and the constitutional issues raised are "inextricably intertwined" with issues regarding the propriety of such judgments. The face of Plaintiff's complaint plainly seeks a new trial regarding the curatorship of his son and, in order to grant this remedy, this Court would have to reverse or vacate one or more state court judgments. Therefore, the undersigned finds that this Court does not have subject matter jurisdiction over this action.[10]

**IT IS RECOMMENDED** that defendant's Motion to Dismiss [Doc. # 10], be **GRANTED** and Plaintiff's action **DISMISSED** without prejudice. Fed.R.Civ.P. 12(b)(1).

Under the provisions of 28 U.S.C. §636(b)(1)(C) and FRCP Rule 72(b), the parties have **ten (10) business days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within **ten**

---

Moreover, the undersigned can discern no connection between a custody determination involving Plaintiff's daughter and the relief which he seeks in this case, nor is there any indication that Plaintiff seeks a remedy specific to Judge Sharp's alleged custody determination. Rather, the only remedy Plaintiff seeks in this action is a new trial regarding the curatorship of his son. Therefore, although the relationship between Judge's Sharp's judgment and the curatorship of Plaintiff's son eludes the undersigned, it is clear that the relief Plaintiff seeks is the reversal or vacature of Judge Dimos's and/or Judge Manning's judgments regarding the curatorship of his son, and it is equally clear that this Court does not have jurisdiction to grant such relief under *Rooker-Feldman*. *See MAPP* at *1 ("... review is precluded by *Rooker-Feldman* whenever 'success on the federal claim depends upon a determination that the state court wrongly decided the issues before it.'") (citation omitted).

[10] Having found that subject matter jurisdiction is lacking, this undersigned does not address Defendants's 12(b)(6) grounds for dismissal, as such would constitute a decision on the merits.

**(10) business days** after being served with a copy thereof. A courtesy copy of any objection or response or request for extension of time shall be furnished to the District Judge at the time of filing. Timely objections will be considered by the District Judge before he makes a final ruling.

**A PARTY'S FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN TEN (10) BUSINESS DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT ON GROUNDS OF PLAIN ERROR, FROM ATTACKING ON APPEAL THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.**

THUS DONE AND SIGNED at Monroe, Louisiana, this 20th day of October, 2008.

KAREN L. HAYES
U. S. MAGISTRATE JUDGE